**DISTAFF, INCORPORATED,
Plaintiff–Appellant,**

v.

**SPRINGFIELD CONTRACTING
CORPORATION, Defendant–
Appellee.**

**No. 92–1302.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 28, 1992.

Decided Jan. 13, 1993.

As Amended Jan. 27, 1993.

Before MURNAGHAN, NIEMEYER and HAMILTON, Circuit Judges.

## OPINION

HAMILTON, Circuit Judge:

On June 4, 1988, a fire occurred at the Naval Research Laboratory in Washington, D.C. Distaff, which suffered damage as a result of the fire, was a contractor engaged in asbestos abatement in the building in which the fire occurred. Distaff appeals the district court's order excluding from evidence a governmental investigative report which indicated that equipment supplied by Springfield caused the fire. Distaff also appeals the district court's order restricting Distaff's causes of action to a negligence theory of recovery. Springfield argues against the above and counters that the appeal should be dismissed because Distaff requested the district court to dismiss its suit with prejudice. We find that the appeal should not be dismissed; however, we remand for reconsideration of the district court's order excluding the governmental report. Furthermore, the district court did not err in restricting Distaff's causes of action to negligence.

### I

In June 1988, Distaff was engaged as a contractor to abate asbestos at the Naval Research Laboratory in Washington, D.C. Pursuant to a contract, Springfield installed certain equipment and enclosures at the work-site. On June 4, 1988, after Distaff had ended work for the day, a fire occurred at the job site which caused substantial damage to the building and equipment therein.

Before the fire was extinguished, James R. Kelso, Chief Fire Inspector at the laboratory where the fire occurred, arrived at the scene. He conducted an investigation immediately after the fire was extinguished. Mr. Kelso authored a report memorializing his investigation which stated in part:

An investigation revealed the most probable cause of the fire was a high impe-

Victor Michael Glasberg, Victor M. Glasberg & Associates, Alexandria, VA, argued, for plaintiff-appellant.

Theresa Elizabeth Cummins, Law Offices of Theresa E. Cummins, Arlington, VA, argued, for defendant-appellee.

dance short in the electrical power cord of a contractor's air machine being used to create a negative air pressure in the building during asbestos removal. The equipment had an improper splice in the cord.

(J.A. 56). This equipment was supplied by Springfield.

On June 1, 1991, Distaff filed a complaint against Springfield in the district court alleging breach of contract, breach of warranty, and negligence. At the time of the filing, Springfield was in bankruptcy. So that the case might proceed in district court, Distaff filed a motion for relief from the bankruptcy stay on the grounds that any recovery would be from Springfield's insurance carrier and thus would not affect the assets of the bankrupt's estate. Pursuant to Distaff's motion, on July 24, 1991, the Bankruptcy Court of the Eastern District of Virginia, in which Springfield had filed for bankruptcy, entered an order partially lifting the automatic stay and allowing Distaff to "file suit against debtor for losses and damages suffered due to debtor's negligence...." (Order, J.A. 9). The bankruptcy court limited any recovery to Springfield's insurance coverage.

Before trial, Springfield contended that Distaff exceeded the scope of the bankruptcy court's order because Distaff sought to recover on contract grounds in addition to negligence. Distaff countered that the order covered all causes of action arising from Springfield's negligence. On July 24, 1991, the district court ruled that the case would proceed to trial only on the negligence theory of recovery.

Prior to this ruling, the district court also ruled that Kelso could not testify as an expert because the Navy refused, pursuant to its regulations, to allow Kelso to testify as to his findings and conclusions. Distaff agreed that Kelso could not testify as to his conclusions, but that Distaff was entitled, under Fed.R.Evid. 803(8), to introduce Kelso's report. The district court refused to admit the report on the ground that the defense would be unable to cross-examine Kelso concerning the conclusions contained in the report.

Following this ruling, Distaff requested the trial court to dismiss its case with prejudice so that it might immediately appeal the district court's ruling on the Kelso report. Distaff's reason for its request for immediate appeal was that the Kelso report was its primary evidence indicating that Springfield was responsible for the fire. According to Distaff, the district court had so restricted the action by excluding the report and limiting the case to a theory of negligence that Distaff had no chance of winning its case. The district court agreed, stating:

> As a practical matter, though, if I require the plaintiff to put on its case, grant a motion for directed verdict at the close of its case, we are right where we are now. We may not be there until 2:00 o'clock this afternoon, but aren't you going to be before the appellate court in either scenario?
>
> .     .     .     .     .
>
> I'm going to allow the dismissal with prejudice, with the plaintiff reserving his right to appeal. I think otherwise I'm putting everybody, including the jury, through an exercise that I just don't care to do.

(J.A. 48–48a).

The district court granted the motion and this appeal followed. Distaff appeals both the limiting of its case to a negligence theory of recovery and the district court's grant of Springfield's motion in limine precluding the admission of the Kelso report.

## II

It is clear that the district court *said* it was dismissing the suit as a voluntary dismissal with prejudice. Normally, a plaintiff may not appeal the dismissal of his suit with prejudice, which is granted on his own motion. *United States v. Proctor & Gamble Company*, 356 U.S. 677, 680, 78 S.Ct. 983, 985, 2 L.Ed.2d 1077 (1958);

*Marks v. Leo Feist, Inc.,* 8 F.2d 460 (2d Cir.1925).

If it were clear that this is what the district court intended, appeal would not be possible. In this case, however, as the facts indicate, the district court was trying to give a final adjudication of the case before the presentation of evidence because Distaff had no hope of succeeding on its admissible evidence. Distaff and the district court agreed, in effect, that without the report, Distaff's evidence did not raise a genuine issue of material fact from which a reasonable jury could find in its favor. Summary judgment was appropriate under the circumstances and is what the district court clearly intended.[1] Contrary to Springfield's contention, this ruling does not promote piecemeal appeal. Distaff is risking, as does any plaintiff against which summary judgment is directed, that if it loses its appeal, it may not return to district court to proceed as if it merely lost an interlocutory appeal. We will not reverse a district court's decision based on its misnomer or misapplication of the proper procedure where the error does not affect the substantial rights of the parties. Fed. R.Civ.P. 61.

### III

■ We next consider whether or not the Kelso report was properly excluded. Generally, the trial judge enjoys broad discretion in deciding whether or not evidence is admissible. Its rulings may not be reversed absent a showing of an abuse of discretion. *Beaty Shopping Center v. Monarch Insurance Co. of Ohio,* 315 F.2d 467, 471 (4th Cir.1963).

■ Distaff asserts that the Kelso report should have been admitted under Fed. R.Evid. 803(8). Under that rule:

Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Government reports which include findings and opinions from an official investigation are admissible under Rule 803(8) if the contents are trustworthy. *See, e.g., Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988) (holding a Navy aircraft accident investigative report was admissible). The admission of such investigative reports is somewhat controversial. The general rule, however, is widely accepted that such reports are admissible. Weinstein, *Weinstein's Evidence,* § 803(8)[03].

Factors to be used by a court in passing upon the admissibility of evaluative reports are: "(1) the timeliness of the investigation; (2) the special skill or experience of the official; and (3) possible motivational problems." *Ellis v. International Playtex, Inc.,* 745 F.2d 292, 300–01 (4th Cir. 1984) (citing *Kehm v. Proctor & Gamble,* 724 F.2d 613, 618–19 (8th Cir.1983)). Other factors may indicate a lack of trustworthiness: unreliability, inadequate investigation, inadequate foundation for conclusions, invasion of the jury's province. *See generally* Weinstein, *Weinstein on Evidence* § 803(8).

---

1. The district court commented that it would award a directed verdict at the close of Distaff's evidence. A directed verdict and summary judgment are essentially the same, although some slight differences have been recognized. *See generally* C. Wright, A. Miller *Federal Practice and Procedure* § 2532 (1971 & Supp.1992). "The primary difference between the two is procedural: summary judgment is usually made before trial and decided on documentary evidence, while directed verdicts are made at trial and decided on the evidence that has been admitted." *Bill Johnson's Restaurants, Inc. v. N.L.R.B.,* 461 U.S. 731, 745 n. 11, 103 S.Ct. 2161, 2171 n. 11, 76 L.Ed.2d 277 (1983). Because the district court's adjudication is most closely analogous to summary judgment, we characterize it as such.

The district court excluded the report because it felt that it would be unfair to let the report in when Springfield could not cross-examine Kelso concerning the conclusions in the report.[2] Although there may be many reasons for finding a report untrustworthy, it is clear that the inability of the defense to cross-examine the author on the conclusions in the report is not a reason for exclusion. Graham, *Federal Practice and Procedure*, § 6759 (1992). "[T]he inability to cross-examine the investigator cannot per se invalidate the report since 803(8) does not depend on the availability of the declarant...." *Id.* at 677 n. 22. That is one of the very reasons for having such a hearsay exclusion: so that the reporting officer does not have to testify. *Id.* The district court, therefore, erred in excluding the report simply because Kelso could not be examined as to the conclusions and opinions contained in the report.[3]

We do not intend to dictate, however, that the report must be admitted. The district court may find, based on other grounds such as Fed.R.Evid. 403, or analysis of the factors above, that the report should not be admitted.[4]

## IV

Finally, we consider the question of whether or not the district court correctly limited Distaff's cause of action to negligence. Distaff contends that the district court exalted form over substance when it focused on the word "negligence" in the bankruptcy court's order. The district court should have, Distaff asserts, considered the intention of the bankruptcy court to exclude any recovery that might reduce the estate, i.e., recovery that was not covered by insurance. Springfield counters that the exact language of Distaff's request for relief from the stay and the language from the order itself indicate that the only requested and granted relief was to pursue a negligence claim:

> That movant, Distaff, Inc., be granted relief from Stay, permitting it to file suit against Debtor for losses and damages suffered due to debtor's negligence

(Distaff's Request for Relief, J.A. 9).

. . . . .

> Movant ... is permitted to file suit against debtor for losses and damages suffered due to Debtors negligence ... Movant's recovery ... is limited to Debtor's insurance coverage.

(Bankruptcy Court's Order, J.A. 9a).

The district court clearly based its restriction on the language of the stay:

> [T]he restrictions on the stay is clearly limited in my opinion to negligence. Actually it doesn't really make much difference. The standards for negligence and breach of warranty of fitness in both [is

---

**2.** Although the parties do not question the authority of the Navy to restrict Kelso's testimony, we note that agency heads do have the authority in certain situations, including this one, to restrict testimony of their subordinates through the promulgation of regulations. *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir.1989) (citing *United States v. Ragen*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951)). "The policy behind such prohibitions on the testimony of agency employees is to conserve governmental resources where the United States is not a party to a suit and to minimize government involvement in controversial matters unrelated to official business." *Downie*, 873 F.2d at 70 (citing *Reynolds Metals Co. v. Crowther*, 572 F.Supp. 288, 290–91 (D.Mass.1982)).

**3.** It would be appropriate, and within the district court's discretion, to comment on the weight of the report and to inform the jury that they are not to allow the reporting official's judgment to subsume their own. Weinstein, *Weinstein's Evidence* § 803(8)[03] (1984).

**4.** We view, as without merit, Springfield's argument that the report should be excluded because fire investigation is not a "main function" of the United States Navy. *See* McCormick, *Can the Courts Make Wider Use of Reports of Official Investigation*, 42 Iowa L.Rev. 363 (1957) (specifically noting the admissability of a fire-marshall's investigative report) (quoted by Weinstein, *Weinstein's Evidence* § 803(8)[03] ). We decline to consider for the first time on appeal whether or not the report should be excluded because it is untrustworthy. This determination is appropriately made by the district court. *See Ellis v. International Playtex*, 745 F.2d 292 (4th Cir.1984).

the same]. So there isn't all that much difference.

(Transcript, J.A. 42a).

We agree with the district court. The language of the order is plain on its face. The bankruptcy court clearly limited the lifting of the stay to enable Distaff to proceed solely on its negligence claim. The bankruptcy court did not permit Distaff to proceed on a contract claim. The only appropriate grounds for relief from the stay cited by Distaff was the coverage of the suit by insurance. Only partial lifting of the stay to the extent of insurance coverage was appropriate. 2 *Collier on Bankruptcy*, (MB) ¶ 362.07[3] at 362–71 (15th ed. 1992). We will not go behind the plain meaning of the bankruptcy court's order. Distaff's relief from the plain meaning of the order was to seek modification or clarification from the bankruptcy court, 11 U.S.C. § 102(1), or to appeal the order. *See Sovran Bank N.A. v. Anderson*, 743 F.2d 223 (4th Cir.1984).

## V

In summary, we find that this appeal should not be dismissed and that the district court was correct in limiting Distaff's theory of recovery to negligence. We reverse, however, the district court's order excluding the Kelso report and remand for further consideration of its admissibility. The decision of the district court is, therefore, affirmed in part and reversed in part, and the case is remanded for the district court to consider the admissibility of the Kelso report.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.